UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
DENNIS SANT and KATHLEEN SANT,

                Plaintiffs,

- against -                      **OPINION & ORDER**

WILLIS STEPHENS and TOWN OF        18-CV-9954 (CS)
SOUTHEAST, PUTNAM COUNTY, STATE OF
NEW YORK,

                Defendants.
-----------------------------------------------------------------

Appearances:

Steven Felsenfeld
Felsenfeld Legal, PLLC
Ossining, New York
*Counsel for Plaintiffs*

Adam L. Rodd
Drake Loeb, PLLC
New Windsor, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' motion to dismiss Plaintiffs' Amended Complaint. (Doc. 26.)

## I. BACKGROUND

      The Court accepts as true the facts, but not the conclusions, set forth in Plaintiffs' Amended Complaint. (Doc. 23 ("AC").)

### A. Facts

      Plaintiffs Dennis and Kathleen Sant reside in the Town of Southeast (the "Town") in Putnam County, New York. (*Id.* ¶ 5.) Defendant Willis Stephens is the Town Attorney and

Town Prosecutor for the Town, as well as a private practicing attorney who works as an "independent contractor" for the Town. (*Id.* ¶¶ 6, 11-13.)

The Town's Ethics Code (the "Code") sets forth at § 18-1.A:

> It is the policy of the Town of Southeast that all officers and employees must avoid conflicts or potential conflicts of interest which shall exist whenever an officer or employee has an interest, direct or indirect, which conflicts with his or her duty to the Town or which could adversely affect an individual's judgment in the discharge of his or her responsibilities.

(*Id.* ¶ 9.) Section 18-3.D of the Code states, "A Town officer or employee shall not represent any other person in any matter that person has before any Town Agency," and §18-3.E provides, "A Town officer or employee shall not appear before any agency of the Town except on his or her own behalf or on behalf of the Town." (*Id.* ¶ 10.)

Plaintiffs allege that the Town pays Stephens over $250,000 per year in his capacity both as the Town Attorney and as an independent contractor. (*Id.* ¶ 15.) A 2010 audit report from the New York State Comptroller showed that Stephens received a six-figure salary as Town Attorney and that his law firm billed the Town more than $150,000 for "other" legal services. (*Id.* ¶ 16.) The 2010 audit also showed that because the Town "lacked a written contract with the attorney's firm," it could not be "determine[d] whether the legal fees charged as an independent contractor were valid or if they should have been included in his duties as the town attorney." (*Id.* ¶ 17.)

Stephens has appeared as a private practitioner before the Town Building Department that he oversees as the Town Attorney. (*Id.* ¶ 20.) Appearing before the Town Building Department (and related Town Zoning and Planning Boards), Stephens has offered "statements of fact" on behalf of his clients and friends. (*Id.* ¶ 21.) Plaintiffs allege upon information and belief that Stephens's appearance before the Town Zoning or Planning Boards would cause Code

2

violations to be rendered null and void and would result in his requested relief. (*See id.* ¶¶ 22-23.) Plaintiffs further allege upon information and belief that Stephens's appearance as a "fact witness" is at the center of many homeowners' complaints in the Town. (*Id.* ¶ 24.)

Plaintiffs have jointly owned property located at 293 Tonetta Lake Road in the Town since 1984. (*Id.* ¶ 40.) In December 1989, Plaintiffs applied for and obtained a building permit to construct a "pole barn/studio," which was to be used as a residence for Mr. Sant's brother. (*Id.* ¶¶ 59-60.) In an attempt to "regularize" their property, Plaintiffs expanded their septic field, but were unsuccessful in actually obtaining approval for the expanded septic field from Putnam County. (*Id.* ¶¶ 62-64.) In 1997, the Town changed the real estate tax assessment classification of Plaintiffs' property from single-family R-210 to multi-family R-280. (*Id.* ¶¶ 64-65.) Plaintiffs allege that they somehow construed the Town's rezoning as mooting any need for approval of the septic system from Putnam County, so they stopped trying to secure approval, and paid the increased taxes associated with the change in their tax assessment classification. (*Id.* ¶¶ 65-67.) They never received a certificate of occupancy. (*See id.* ¶ 77.)

In 2008, the Town – after apparently looking the other way for many years – asserted that Plaintiffs' property could not be lawfully put to a multi-residential use and that Plaintiffs must evict Mr. Sant's brother, who by that time had resided at their property for nearly twenty years. (*Id.* ¶ 71.) On or about June 18, 2009, Plaintiffs filed for a zoning variance but the Town "kept turning Plaintiffs back to seek approvals from Putnam" regarding their septic system. (*Id.* ¶¶ 74, 77.) In late June 2009, Mr. Sant met with Stephens at Stephens's private law office regarding the variance, and Stephens allegedly "lectured [Mr. Sant] about not 'registering' an apartment and 'collecting rent' from his brother, even though [Mr. Sant] told him repeatedly he did not collect rent from his brother." (*Id.* ¶ 76.) Plaintiffs assert that at a Planning Board meeting in June

2011, there were discussions about whether to except the Plaintiffs' property from the septic system requirements of Putnam County as a "pre-existing, non-conforming" parcel. (*Id.* ¶ 79.) About a month later, Mr. Sant again met with Stephens at Stephens's private law office to discuss the variance. (*Id.* ¶ 80.) Plaintiffs allege that Stephens questioned why Mr. Sant had returned to speak to him about the variance, and Mr. Sant explained that he had been "directed to meet with Stephens by the Planning Board, who then directed him back to the building department and to follow their instructions." (*See id.*) Plaintiffs allege upon information and belief that the Town never took further action to consider an exception from Putnam's requirements for Plaintiffs' property as a "pre-existing, non-conforming" property, (*id.* ¶ 81), and never granted such an exception, (*id.* ¶ 82).

Plaintiffs allege that the Town's actions with respect to their property were motivated by Town Supervisor Tony Hay's and Stephens's personal and political animus against Mr. Sant. (*Id.* ¶ 83.) While participating in the same political committee as Stephens from 2007 to 2009, Mr. Sant spoke out against Stephens for holding multiple roles in the Town's government. (*Id.* ¶¶ 87-89.) In 2011, Hay harbored animus toward Mr. Sant because of Mr. Sant's criticisms of Stephens's role in the Town's government. (*Id.* ¶¶ 90-91.) That same year, Plaintiffs' daughter Elizabeth was denied a temporary position that she had already accepted in the Town's Building Department, in part because Stephens said Elizabeth might have a conflict of interest due to a possible building violation on her parents' property. (*Id.* ¶¶ 92-94.) Several months later, Plaintiffs' son Denny did not get appointed to a position with the Town's Zoning Board of Appeals ("ZBA") based on a memorandum written by Stephens explaining that Denny might have a conflict of interest in holding that position. (*Id.* ¶¶ 95-96.) In 2013, Denny sought an endorsement to run for the Town Board, but Town Councilman Robert Cullen sent an email on

May 1, 2013 to other Town Board members indicating that Denny would have a conflict in holding a Town Board position due to his parents' illegal property usage. (*Id.* ¶¶ 97-98.) Sometime later that month, Mr. Sant and Stephens met at Stephens's private law office for the third time regarding the variance. (*Id.* ¶¶ 99, 101.) During the meeting, Stephens slammed his hand on the desk and demanded to know who kept referring Mr. Sant to talk to Stephens, and Mr. Sant told Stephens that the Planning Board and ZBA and other Town officials directed him to do so. (*Id.* ¶ 101.)

On or about September 24, 2013, Plaintiffs were served with an "appearance/complaint ticket" to appear at Southeast Justice Court for building code violations. (*Id.* ¶ 103.) Initially, the matter was prosecuted by Stephens. (*Id.* ¶ 104.) On September 24, 2014, following a court appearance, Mr. Sant asked Stephens why this matter was being prosecuted and Stephens sought to physically accost Mr. Sant. (*See id.* ¶ 105.) Stephens then recused himself from Plaintiffs' matter and was replaced by outside counsel. (*Id.* ¶ 106.) On January 21, 2016, Judge Joseph Spofford of the Town of Carmel's Town Court dismissed the Town's appearance/complaint ticket, and the dismissal was affirmed by the Appellate Division on March 23, 2017. (*Id.* ¶¶ 107-109.)

On September 26, 2017, Plaintiffs commenced an Article 78 proceeding to compel the Town to grant them a variance authorizing the accessory structure and dwelling unit use, and the proceeding was dismissed in 2017 on the ground that Plaintiffs were never denied a variance by the Town. (*Id.* ¶¶ 112-114.) In the summer of 2018, Mr. Sant's brother moved from the property because he no longer felt comfortable there. (*Id.* ¶ 116.) At some point thereafter,

Plaintiffs moved, surrendering their property to a bank because they "discovered it was effectively unmarketable." (*Id.* ¶¶ 119-120.)[1]

B. **Procedural History**

Plaintiffs filed this action on October 29, 2018. (Doc. 1.) On December 14, Defendants filed a pre-motion letter in anticipation of their motion to dismiss, (Doc. 16), and the Court scheduled a pre-motion conference for January 24, 2019, (Doc. 21). At the conference, the Court granted Plaintiffs leave to amend their complaint, (Minute Entry dated Jan. 24, 2019), which they did on February 26, 2019, (AC). Thereafter, Defendants filed their motion to dismiss, (Doc. 26), along with their memorandum of law, (Doc. 30 ("Ds' Mem.")), a declaration of counsel, (Doc. 27 ("Rodd Decl.")), the affidavit of Michael Levine, the Code Enforcement Officer for the Town, (Doc. 28 ("Levine Aff.")), and various exhibits, (Doc. 29 Exs. A-V). Plaintiffs filed an opposition memorandum, (Doc. 36 ("Ps' Opp.")),[2] a declaration of counsel, (Doc. 35

---

[1] Plaintiffs' AC describes other properties in the Town that were not subject to enforcement actions, (AC ¶¶ 43-58), which I will consider as part of Plaintiffs' selective enforcement claims. The AC also alleges Defendants showed favoritism to the owner of property at 5 Shady Lane, Brewster, New York, (*id.* ¶¶ 26-39), but Plaintiffs do not make clear how that litigation is relevant to the case here.

[2] Plaintiffs' opposition memorandum is largely conclusory and lacking in authority. At the beginning of every section of argument, apart from that addressed to the statute of limitations, Plaintiffs state in substance, "Given that the Court has concluded that for purposes of the instant motion to dismiss that this Action is not time barred, Defendants have not offered a basis pursuant to which this action should be dismissed pursuant to FRCP Rule 11." (*See* Ps' Opp. at 7-12.) This stanza forms the entire basis or nearly the entire basis of several arguments in opposition to Defendants' motion to dismiss. (*See, e.g.*, *id.* at 8-9.) First, the Court has not assumed for purposes of this motion, let alone concluded, that Plaintiffs' lawsuit is timely. (In fact, it is not.) Plaintiffs may have meant to say "Assuming" rather than "Given." Second, the basis for Defendants' motion is found in Federal Rule of Civil Procedure 12, not 11. (*See* Doc. 26.) And third, this type of undeveloped argument is unacceptable where a plaintiff is represented by counsel. I would be on firm ground were I to find several causes of action abandoned based on the failure to adequately brief the issues. *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived . . . ."); *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 149

("Felsenfeld Decl.")), and accompanying exhibits, (*id.* Exs. A-C). Defendants filed a reply memorandum. (Doc. 32 ("Ds' Reply").)

Plaintiffs' AC raises the following claims against Stephens and the Town under 42 U.S.C. § 1983: First Amendment retaliation; deprivation of Fourteenth Amendment due process; violation of the Fourteenth Amendment equal protection clause; intentional infliction of emotional harm; and conspiracy. (AC ¶¶ 123-131, 138-165.) Plaintiffs also advance a conspiracy claim under 42 U.S.C. § 1985, and a claim under the Town's Code of Ethics against both Defendants. (*See id.* ¶¶ 166-171, 180-185.) Plaintiffs withdrew their claims under the Fifth Amendment, (*id.* ¶¶ 132-137), and 42 U.S.C. § 1982, (*id.* ¶¶ 172-179). (Ps' Opp. at 7 n.2.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

---

(S.D.N.Y. 2003) (claim abandoned where opposition brief did not address arguments for dismissal). But as discussed herein, Plaintiffs' lawsuit is dismissed for reasons separate and apart from being insufficiently argued.

7

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

B. <u>**Documents Properly Considered**</u>

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir.

8

2016) (alteration in original) (citation and internal quotation marks omitted). When a court takes judicial notice of a document on a motion to dismiss, it should generally do so only "to determine what statements [the documents] contain [ ] . . . not for the truth of the matters asserted." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Both parties attached exhibits to their motion papers. I will take judicial notice of the publicly availably documents that the parties submitted. *See Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011). I will also consider Plaintiffs' other exhibits, which include (1) an email exchange from May 2013 that includes Cullen, (Felsenfeld Decl. Ex. B); and (2) a letter from Mr. Sant to Judge Spofford in connection with Plaintiffs' case in the Town of Carmel Town Court, (*id.* Ex. C), as documents relied upon or referred to in the AC. But I consider them for the fact of their contents, not their truth. I will not consider the factual assertions in the Levine Affidavit because declarations and affidavits submitted in support of a motion to dismiss "are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, not to advance factual averments or legal arguments." *Clark v. Kitt*, No. 12-CV-8061, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014) (citation omitted), *aff'd*, 619 F. App'x 34 (2d Cir. 2015) (summary order).

### III. DISCUSSION

#### A. 42 U.S.C. §§ 1983 and 1985 Claims

Twelve out of fourteen of Plaintiffs' causes of action arise under either §§ 1983 or 1985. (AC ¶¶ 123-131, 138-171.) Defendants argue that these claims are time-barred. (Ds' Mem. at 7-9, 11-14, 17-18, 20-22.) "The statute of limitations for actions brought pursuant to §§ 1983 and 1985 is three years." *Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir.

9

2001). "Under federal law, which governs the accrual of claims brought under §§ 1983 and 1985, a claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (citation and internal quotation marks omitted).

Because Plaintiffs' AC was filed on October 29, 2018, any §§ 1983 and 1985 claims based on acts prior to October 29, 2015, are untimely. All of the cognizable acts complained of in Plaintiffs' AC fall outside the limitations period. Plaintiffs allege that Stephens (1) challenged the legality of Plaintiffs' use of their property in 2008; (2) took actions to deny Plaintiffs' daughter Elizabeth a temporary position in the Town's Building Department in 2011; (3) took actions to deny Plaintiffs' son Denny a position with the Town's ZBA a few months after Elizabeth was denied a position in 2011; and (4) participated in the filing of a complaint against Plaintiffs in September 2013. Because none of these acts falls within the applicable statute of limitations period, Plaintiffs' causes of action arising under §§ 1983 and 1985 (causes of action one, two, and five through fourteen) are dismissed as untimely.[3]

---

[3] The prosecution of the Town's appearance/complaint ticket into 2017 does not extend the statute of limitations. Plaintiffs' First Amendment retaliation claims accrued when they were issued the ticket in September 2013, *see Smith v. Campbell*, 782 F.3d 93, 99-100 (2d Cir. 2015) (First Amendment retaliation claim accrued when the plaintiff was issued traffic tickets), and the selective prosecution equal protection claim accrued at the same time, *see O'Hara v. City of N.Y.*, No. 17-CV-4766, 2019 WL 2326040, at *4 (E.D.N.Y. May 31, 2019) (selective prosecution claim time-barred when "the criminal process was set in motion and he was arrested for the sole purpose of retaliation") (internal quotation marks and alterations omitted). Because Plaintiffs' claims for due process appear to be based on Defendants' alleged retaliation, (*see* AC ¶¶ 139, 142), the due process claims are duplicative and subsumed by Plaintiffs' First Amendment retaliation claims, *see C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 320 (E.D.N.Y. 2016) ("[T]hey are effectively claiming that they were denied substantive due process because their First Amendment rights were violated. However, where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.") (internal quotation marks omitted), which, as discussed, are untimely. Furthermore, as discussed below in note 6, the equal protection claim also "coalesces"

Plaintiffs do not argue to the contrary but, in an effort to resuscitate their claims, invoke the doctrine of equitable tolling. (Ps' Opp. at 4-7.) "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "The Second Circuit has explained that the type of situation warranting equitable tolling is one where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." *Lefebvre v. Morgan*, 234 F. Supp. 3d 445, 459 (S.D.N.Y. 2017) (internal quotation marks omitted) (emphasis in original). Equitable tolling is "only appropriate in rare and exceptional circumstances." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks and alterations omitted). "Where there is no showing of equitable consideration, a court may not extend the limitations period by even one day." *Wright v. N.Y. State Unified Court Sys.*, No. 14-CV-4360, 2016 WL 11472251, at *2 (E.D.N.Y. Feb. 3, 2016).

Plaintiffs contend that the Court should find it "unconscionable" that for over ten years, the Town never decided whether to grant Plaintiffs a zoning variance. (Ps' Opp. at 5-7.)[4] But the claim accrues, and the statute of limitations begins to run, when the plaintiffs know or have reason to know of the injury which is the basis of the lawsuit. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002); *see also Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (claims

---

with the First Amendment claim. And Stephens ceased to have any part in the prosecution in 2014, so the statute of limitations would bar claims against him anyway.

[4] Defendants contend that Plaintiffs are collaterally estopped from claiming that they applied for a zoning variance because in the Article 78 proceeding brought against the Town in 2017, the New York Supreme Court in Putnam County dismissed Plaintiffs' case, deeming it not ripe for judicial review because Plaintiffs had not applied for any zoning variance from the Town. (Ds' Reply at 2-4.) I need not reach that issue here.

under § 1983 "accrue[] when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm"). Plaintiffs were aware of the actions undertaken by Defendants and the harm allegedly inflicted no later than September 2013. By that time, the Town had already asserted that Plaintiffs could not put their property to multi-residential use, Plaintiffs' children had each been denied positions with the Town, and Plaintiffs had been served with an "appearance/complaint ticket" for building code violations. Thus, Plaintiffs have not identified "rare and exceptional circumstances" that prevented them from instituting this action within the prescribed limitations period.[5]

To the extent Plaintiffs' opposition can be construed to argue for the application of the continuing-violation doctrine, "as a general rule, courts in the Second Circuit [view] continuing violation arguments with disfavor," and do not apply it unless there are "compelling circumstances." *See Plumey v. New York*, 389 F. Supp. 2d 491, 498 (S.D.N.Y. 2005) (internal quotation marks and alteration omitted). Plaintiffs' AC is based primarily on a series of discrete alleged retaliatory events, and such "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (continuing violation doctrine does not apply to "discrete unlawful acts, even where these acts are part of a 'serial violation,'" but rather only applies "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment") (quoting *Morgan*, 536 U.S. at 111); *see also Chin v. Port Auth.*, 685 F.3d 135, 157 (2d Cir. 2012)

---

[5] Plaintiffs also seem to suggest that the statute of limitations should be tolled because the Town taxed the property as multi-family from 1997 through 2009. (Ps' Opp. at 4.) They do not explain how this fact, or the Town's silence about any violations until 2008, prevented them from recognizing the injuries that occurred between 2008 and 2013.

("Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period."). Therefore, Plaintiffs' continuing-violation argument does not carry the day and Plaintiffs' §§ 1983 and 1985 claims are time-barred.[6]

---

[6] I need not reach Defendants' other arguments, but they are correct that Plaintiffs' due process claim, to the extent it is intended to allege a deprivation of substantive due process, fails because they do not plausibly allege a clear entitlement to the zoning benefit they sought, *see O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994); *RRI Realty Corp. v. Inc. Village of Southampton*, 870 F.2d 911, 915 (2d Cir. 1989), and to the extent it is intended to allege a deprivation of procedural due process, it fails because they do not allege that they were deprived of a right without notice or an opportunity to be heard, or otherwise describe any process to which they were entitled that they did not receive, *see Attallah v. N.Y. Coll. of Osteopathic Med.*, 643 F. App'x 7, 10 (2d Cir. 2016) (summary order); *Local 342, Long Island Pub. Serv. Emps. v. Town Bd.*, 31 F.3d 1191, 1194 (2d Cir. 1994); *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988); *Deperno v. Town of Verona*, No. 10-CV-450, 2011 WL 4499293, at *7 (N.D.N.Y. Sept. 27, 2011). Defendants are also correct that Plaintiffs' selective enforcement equal protection claim fails for failure to allege similarly situated comparators. *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790-91 (2d Cir. 2007); *Joglo Realties, Inc. v. Seggos*, No. 16-CV-1666, 2016 WL 4491409, at *9 (E.D.N.Y. Aug. 24, 2016); *Richardson v. Newburgh Enlarged City Sch. Dist.*, 984 F. Supp. 735, 746 (S.D.N.Y. 1997). Further, to the extent the selective prosecution equal protection claim is based on retaliation, it coalesces with the First Amendment retaliation claim. *See African Trade & Info. Ctr. Inc. v. Abromaitis*, 294 F.3d 355, 363 (2d Cir. 2002); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 372 (S.D.N.Y. 2011). Finally, there is no cause of action under § 1983 for infliction of emotional distress, *see Walker v. Clemson*, No. 11-CV-9623, 2012 WL 2335865, at *3 (S.D.N.Y. June 20, 2012) (claim under § 1983 requires a plaintiff to allege that "a right secured by the Constitution or laws of the United States was violated"), *report & recommendation adopted*, 2012 WL 3714449 (S.D.N.Y. Aug. 28, 2012); *see also F.D.I.C. v. Rusconi*, 808 F. Supp. 30, 45 (D. Me. 1992) ("Courts have held that no federal common law exists regarding claims for infliction of emotional distress; rather, such claims are based on state common law."), and Plaintiffs' conspiracy claims fail because there is no viable underlying constitutional violation, *see Schultz v. Inc. Village of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) (summary order); *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (*per curiam*); *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014). Moreover, § 1985 claims must be based on race, *see Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087-88 (2d Cir. 1993) (§ 1985 claim requires a conspiracy "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action") (internal quotation marks omitted), and no such allegations appear in the AC.

B.  **State Law Claims**

In addition to their federal claims, Plaintiffs further allege two claims under the Town Ethics Code. (AC ¶¶ 180-185.) They may also intend to raise a state-law claim for the intentional infliction of emotional distress, even though that claim specifically refers to § 1983. (*Id.* ¶¶ 150-154.) The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. *See id.* (citing 28 U.S.C. § 1367(c)(3)).[7] Plaintiffs' state law claims are dismissed without prejudice.

IV. **LEAVE TO AMEND**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory

---

[7] Although I need not reach the issue, it appears that Defendants are correct that Plaintiffs' claims under the Town's Code of Ethics are without substantive merit because "[v]iolations of ethical rules do not create a private right of action." *Sash v. Rosahn*, No. 08-CV-4032, 2009 WL 1683877, at *3 n.6 (S.D.N.Y. June 16, 2009), *aff'd*, 450 F. App'x 42 (2d Cir. 2011) (summary order); *cf. Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3595, 2014 WL 2863224, at *26 (E.D.N.Y. June 19, 2014) ("Since there is no discernible difference between an attorney's violation of an ethical rule prescribed by the Code of Professional Responsibility and a state employee's violation of the Code of Ethics prescribed by [New York state law], any violation of the Code of Ethics by a state employee does not create a private right of action.") (collecting cases).

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended once, (AC), after having the benefit of a pre-motion letter from Defendants, (Doc. 16), as well as the Court's observations during a pre-motion conference, (Minute Entry dated Jan. 24, 2019). The Court granted Plaintiffs leave to file an amended complaint, which they did on February 26, 2019. In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnotes, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of

the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Plaintiffs have not asked to amend or suggested that they are in possession of facts that would cure the deficiencies identified in this opinion. Indeed, the problem with Plaintiffs' claims is substantive and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop*, 642 F.3d at 369 (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The federal claims (claims one through sixteen) are dismissed with prejudice, and the state-law claims (claims seventeen and eighteen, and claim nine to the extent it was intended as a state-law claim) are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 26), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated: November 12, 2019
      White Plains, New York

                                                        CATHY SEIBEL, U.S.D.J.